Case 47.—ACTION BY BUSTER & ALLIN AGAINST J. G. MAL-LON FOR SPECIFIC PERFORMANCE.—November 2.

## Mallon v. Buster & Allin.

Appeal from Mercer Circuit Court.

W. C. BELL, Circuit Judge.

Judgment for plaintiffs. Defendant appeals. Affirmed.

1. Frauds, Statute of—Agreements Concerning Land—Partnership Purchases—A verbal agreement between bidders at a judicial sale of land to buy the land in partnership and divide the same is not within the statute of frauds.
2. Contracts—Legality—Prevention of Competition at Judicial Sale—An agreement between bidders at a judicial sale of land, who each wished but a part of the tract which was being sold, and who had bid against each other to a price

Mallon v. Buster & Allin.

above the actual value of the property, to stop competing and to buy the land together, each taking the part of it that he desired, was not against public policy.

E. H. GAITHER for appellant.

Where two competitive bidders at a judicial sale of real estate agree, pending the sale, to stop bidding and for one of them to take the land at the last bid, and convey certain parts of it to the other at a price in proportion to the sum bid for the whole, such an agreement was an unlawful combination to stifle bidding, and in all such matters of fraud the court leaves the transaction where it finds it, and will not lend its aid to compel the purchaser to carry out the fraudulent contract by conveying a part of the land to the other party.

### AUTHORITIES CITED.

Beech on Modern Law of Contracts, vol. 2, sec. 1540; Smith v. Ulman, 58 Md., 183; Small v. Jones, 1 W. & S., 129; Kearney v. Taylor, 15 Howe, 494; Hann v. Fife, 27 Mich., 172; Gibbs v. Smith, 115 Mass., 592; Gardnier v. Moss, 24 Md., 140; Brisbane v. Adams, 3 N. Y., 129; Sears v. Louisville Union Ben. Ass'n, 1 Duvall, 143; Edelen v. Norman, 5 Ky. Law Rep., 120; Anderson v. Jett, 11 Ky. Law Rep., 570.

J. T. WILSON for appellee.

The proof shows the following facts: Appellant and appellee were both bidding for property at a judicial sale of land, two lots being sold together, and had run it up to more than its market value, each, however, only wanting one of the lots. Appellant said to appellee: "You only want one of these lots and I want one, why not quit bidding and buy them together, paying for them equally; you take the lot next to you and we the one next to our mill property." To this appellant replied: "All right, why did you not say so sooner?" Then appellee said to appellant: "Is it understood that your last bid is the joint bid of both of us?" Which was agreed to and the two lots were knocked off for said bid. We submit that this was a joint purchase; that it does not contravene public policy, and an agreement to which the statute of frauds does not apply; and appellant should be compelled to convey one of the lots to appellee upon payment of one-half of the agreed purchase price.

### AUTHORITIES CITED.

Butler v. Prewitt, 21 Ky. Law Rep., 813; Green v. Ball, 4 Bush, 487; Williams v. Williams, 8 Bush, 241; Thomas v. McCormack, 9 Dana, 108; Langhorn v. Payne, 14 B. M., 624; Martin v. Martin, 16 B. Mon., 8; Miller's Heirs v. Autte, 2 Bush, 407; Simon v. Gulick, 21 Ky. Law Rep., 104; Garth v. Davis & Johnson, 27 Ky. Law Rep., 505.

OPINION BY JUDGE BARKER—Affirming.

The facts out of which grew this litigation are, briefly, as follows: At a judicial sale had in the case of Marimon v. Marimon, pending in the Mercer Circuit Court, a certain lot of land in the city of Harrodsburg was being auctioned off. Under the judgment this property, which really consisted of two lots, was offered separately, and then as a whole; the bid producing the most money to be accepted. One of these lots (the property being divided) adjoined that of J. G. Mallon. The other was coterminous with the mill property of Buster & Allin. When offered separately, each of these parties purchased the lot adjoining their own property; one lot bringing $200, and the other $240. When the property was offered as a whole the parties litigant here became bidders, and between them raised the price to $516. Some little time before this bid was reached the opposing bids had been going up about a dollar at a time. At this period in the sale Mr. Allin, who had been doing the bidding for Buster & Allin, said to Mallon, substantially: "You want only one of these lots, and we want one. Why not quit bidding against each other and buy them together, paying for them equally and sharing them equally? You take the one next to you, and we the one next our mill property." To which Mallon responded: "All right; why did you not say so sooner?" Mallon does not admit this:

conversation precisely as detailed here; but what he does admit is substantially that. The lot was knocked down to Mallon, who afterwards procured the sale to him to be confirmed by the court and executed bond for the purchase money, but refused to divide with the appellees, except upon a price in excess of that which he had paid at the judicial sale. Whereupon Buster & Allin instituted this action for a specific performance of the contract. Upon final hearing the court adjudged that the verbal contract with reference to the lot was made substantially as alleged by Buster & Allin, and that they were entitled to the half lying next to their property. From this judgment Mallon has appealed.

Without stating the facts with any circumstantiality we think the chancellor correctly ascertained that the contract as detailed here was made. Assuming this to be true, appellant presents two legal defenses:

First, that the contract was verbal, and therefore within the statute of frauds. This contention is disposed of by the opinion in the case of Garth v. Davis & Johnson, 120 Ky., 106, 27 Ky. Law Rep., 505, 85 S. W., 692, where it was held, after a review of a great many authorities, that a partnership for the purchase of real estate at an auction may be made by parol, and is not inimical to the provisions of the statute of frauds with reference to the sale of land. This case is so recent, and so thoroughly covers the question in issue, that it is only necessary to refer to it as decisive of the same question here.

Second, it is urged that the contract was contrary to public policy, as preventing free and untrammeled competition at judicial sale and therefore, although made, the parties being in pari delicto, equity will leave them where it finds them, and consequently the position of the defendants is the better of the two.

It may be conceded, as a general proposition, that contracts which have a tendency to destroy free competition in the bidding at judicial sales are contrary to public policy where they are made for that purpose; but this general principle is limited and controlled by the particular facts of the case to which it is sought to be made applicable. The parties here did not enter into a wrongful conspiracy for the purpose of buying the property in question at a cheaper price than its market value. They had freely competed beyond the actual value of the property, as is shown by the difference between the price realized when the lots were sold separately and that realized when they were sold jointly. Separately they produced $440. Jointly they sold for $516. The reason for this was because the respective bidders only needed the lot next to his own property, and when that alone was being sold he purchased it at its real value at open competitive sale. When, however, the two lots were sold together, each party was forced to bid more than the property was worth in order to get the particular part that he needed.

There is no principle of law that requires parties so situated to unnecessarily injure themselves in order to promote the interest of the beneficiaries of a judicial sale; and a contract between bidders, made for the purpose of protecting themselves against what may be called opportunism growing out of the facts existing at the time of the sale, is not opposed to public policy. All that the beneficiaries of a public sale can require is that their rights shall not be trespassed upon by an unlawful conspiracy which has the effect, or tends to have the effect, of acquiring the property below its market value. In the case at bar, demonstrably the contract in question was

only made after this point was reached, and when it was impossible that its effect should have been to acquire the property below its real worth. This being true, the contention of appellant that the contract was void as opposed to public policy is untenable.

In the case of Garth v. Davis & Johnson, supra, this phase of that case, while not enunciated in the opinion, was discussed by the court more than once, and the conclusion reached that the contract between the parties there was not opposed to public policy.

In the case of Butler v. Prewitt, 21 Ky. Law Rep., 813, 53 S. W., 20, a similar contract to that involved here with reference to the purchase of land at judicial sale was specifically enforced.

The principle we have undertaken to enunciate in this opinion is thus stated in Lawson on Contracts, 307: "But, on the other hand, if the arrangement is entered into for no such fradulent purpose, but for the mutual convenience of the parties, as with the view of enabling them to become purchasers, each being desirous of purchasing a part of the property offered for sale and not an entire lot, and induced by any other reasonable and honest purpose, such agreement will be valid and binding; and an association formed for the purpose of bidding at an auction sale is lawful, and may become the purchaser, unless formed for the purpose of preventing competition."

The judgment of the chancellor, specifically enforcing the contract in question, is affirmed.